J. CHRISTOPHER PHELPS, Plaintiff-Appellee, v. CHICAGO TRANSIT AUTHORITY, Defendant-Appellant.

First District (4th Division)   No. 1—91—0676

Opinion filed December 19, 1991.

Michael Resis, Ellen L. Karecki, and G.A. Finch, all of Querrey & Harrow, Ltd., and William H. Farley, Jr., of Chicago Transit Authority, both of Chicago, for appellant.

Mark S. Komessar and Paul J. Fina, both of Komessar & Wintroub, of Chicago, for appellee.

PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

The plaintiff, J. Christopher Phelps, brought a negligence action against the defendant, the Chicago Transit Authority (CTA), to recover damages for injuries he sustained when he was beaten by fellow passengers on a CTA bus. The jury returned a verdict against the CTA and in favor of the plaintiff and awarded damages in the amount of $120,000. The CTA appeals, contending that the trial court erred in allowing the plaintiff's treating physician to testify concerning the permanent nature of the plaintiff's injuries based on an examination conducted shortly before the physician testified. The CTA also contends that the jury was improperly instructed as to the CTA's duty of care, that the jury verdict was excessive and that the plaintiff's cause of action was barred by the immunity provided for in amended section 27 of the Metropolitan Transit Authority Act (Ill. Rev. Stat. 1989, ch. 111⅔, par. 327).

The 22-year-old plaintiff was riding on a CTA bus on December 10, 1984, when he observed three teenage girls attacking a female passenger. He came to the aid of the passenger and pushed the girls off of the bus. The plaintiff was then dragged off of the bus by a number of young male passengers who beat him severely, fracturing his jaw. The attackers fled before the police arrived.

The plaintiff testified that he was taken by ambulance to a hospital emergency room where he received stitches to close a cut on his head. The next day he went to see his family physician, Dr. Harold Goodman. According to Dr. Goodman's evidence deposition, the plaintiff had numerous scrapes and bruises, swelling on both sides of his head and a cut that had been stitched. The plaintiff

could open his mouth only one to two inches, approximately one-third of a normal expansion. He was admitted to the hospital the next day.

Dr. Bruce L. Douglas, an oral surgeon, testified that X rays revealed that the plaintiff had a nondisplaced upper jaw or maxillary fracture. When Dr. Douglas first saw the plaintiff, the plaintiff was extremely upset, his face was swollen and he had difficulty opening his mouth. The plaintiff was given a neurological consultation and treated with medication for pain and muscle spasms. Under general anesthesia, the plaintiff's jaw was wired shut to allow it to heal properly. The plaintiff remained in the hospital from December 12, 1984, until December 21, 1984.

Prior to trial, the last time Dr. Douglas examined the plaintiff was on January 3, 1985. He then testified that he examined the plaintiff on the day of the trial in the law office of the plaintiff's attorney. The CTA objected to any testimony concerning the results of the examination on the grounds that no disclosure had been made. The trial court overruled the objection. Dr. Douglas then testified that the jaw fracture had healed and that the plaintiff's teeth were in good position. However, the plaintiff still complained of pain, muscle spasms and a limited ability to open his mouth. Dr. Douglas' examination showed that the plaintiff was able to open his mouth only one-half of the normal width. Dr. Douglas heard popping, clicking and grating sounds when the plaintiff opened and closed his mouth. The plaintiff had to wear a plastic splint between his teeth to relieve pressure on the temporomandibular joint. It was Dr. Douglas' opinion that the plaintiff suffered from a temporomandibular joint problem related to the beating incident and that it was an incurable, irreversible problem which would require treatment for an indefinite period. Dr. Douglas testified that the plaintiff would need the benefit of a splint for the rest of his life and that he would permanently suffer pain and discomfort.

The evidence at trial showed that the plaintiff incurred $8,009.45 in medical bills and lost wages in the amount of $408. The facts concerning the jury instruction on the CTA's duty of care and the CTA's claim of immunity will be detailed later in connection with our discussion of those issues.

The CTA first contends that the trial court erred in admitting the treating physician's testimony that the plaintiff's injuries were permanent because that testimony was based upon an examination conducted on the day of trial which was not disclosed to the CTA.

The CTA argues that this was surprise testimony resulting from a "conceived plan of nondisclosure" on the part of the plaintiff.

■■ Under Illinois law, a treating physician may give opinion testimony regarding the permanency of a patient's injuries, providing a recent examination has been performed. (*Wilson v. Chicago Transit Authority* (1988), 126 Ill. 2d 171, 533 N.E.2d 894; *Henricks v. Nyberg, Inc.* (1976), 41 Ill. App. 3d 25, 353 N.E.2d 273.) The supreme court has determined that the Supreme Court Rule 220 (134 Ill. 2d R. 220) disclosure and discovery provisions do not apply to treating physicians. (*Tzystuck v. Chicago Transit Authority* (1988), 124 Ill. 2d 226, 234-35, 529 N.E.2d 525.) In *Wilson v. Chicago Transit Authority* (1988), 126 Ill. 2d 171, 533 N.E.2d 894, the supreme court held that the length of time between the treating physician's actual treatment of the plaintiff and the treating physician's examination of the plaintiff on the last day of trial did not make the treating physician an expert witness subject to Supreme Court Rule 220.

The CTA has failed to direct us to any authority supporting its argument that Dr. Douglas' testimony concerning the permanency of the plaintiff's injuries was inadmissible. The CTA has not identified any case law prohibiting a treating physician from examining the plaintiff on the day of trial. Nor has it pointed to any supreme court rule which would require disclosure of the result of such an examination.

In *Wilson v. Chicago Transit Authority* (1988), 126 Ill. 2d 171, 533 N.E.2d 894, the supreme court allowed testimony by the treating physician concerning the permanency of the plaintiff's injuries based on an examination conducted on the last day of trial without disclosure to the defendant. The CTA's argument here is that *Wilson* is distinguishable because the facts in *Wilson* did not show a conceived plan of nondisclosure on the part of the plaintiff. In fact, however, the *Wilson* court stated only that the record did not "unambiguously support" the assertion that the plaintiff had engaged in a conceived plan of nondisclosure. (*Wilson*, 126 Ill. 2d at 176, 533 N.E.2d at 897.) It then held that "[t]his type of surprise *** must be avoided by adequate trial preparation and not through reliance on the 'protection' of Supreme Court Rule 220." (*Wilson*, 126 Ill. 2d at 176, 533 N.E.2d at 897.) Two dissenting justices, in separate opinions, noted that no amount of trial preparation would have prevented the surprise resulting from the treating physician's eleventh-hour examination. The dissenting opinions concluded that allowing this practice gives the plaintiff an undue advantage and is

"not playing by the rules." *Wilson,* 126 Ill. 2d at 177-78, 533 N.E.2d 2d at 897 (Ryan, J., dissenting); *Wilson,* 126 Ill. 2d at 178, 533 N.E.2d at 898 (Miller, J., dissenting).

■ We do not condone the practice in question here. The *Wilson* decision demonstrates, however, that the supreme court is well aware of the problems caused by such undisclosed last-minute examinations. Despite this awareness, the court has not acted to amend its discovery rules to address the situation. Perhaps this is an area which should be covered by supreme court rules or appropriate legislation. However, given the complete lack of authority supporting the CTA's position, we decline to reverse the trial court's decision to admit the testimony in question.

The CTA next contends that the jury was improperly instructed regarding the standard of care. The allegedly improper instruction stated:

"The plaintiff has the burden of proving each of the following propositions:

First, that the defendant acted or failed to act in one of the ways claimed by the plaintiff as stated to you in these instructions and that in so acting, or failing to act, the defendant failed to exercise the highest degree of care consistent with the mode of conveyance used and the practical operation of its business as a common carrier by bus;

Second, that the plaintiff was injured;

Third, that the failure of the defendant to exercise the highest degree of care was a proximate cause of the injury to the plaintiff.

If you find from your consideration of all the evidence that each of these propositions has been proved, then your verdict should be for the plaintiff. On the other hand, if you find from your consideration of all the evidence that any of these propositions has not been proved, then your verdict should be for the defendant."

The CTA maintains that the instruction was improper because the third paragraph did not contain the phrase "consistent with the mode of conveyance used and the practical operation of its business as a common carrier by bus" to qualify the duty of care owed by the CTA. The CTA argues that because the phrase was not included, the jury could have believed that the CTA's duty to exercise the highest degree of care was absolute and not qualified by the type of vehicle being operated or the circumstances under which the driver had to perform his job.

A reviewing court will not reverse a cause on the basis of an improper jury instruction unless it is able to conclude that the instruction clearly misled the jury. (*Nicholl v. Scaletta* (1982), 104 Ill. App. 3d 642, 646, 432 N.E.2d 1267.) The relevant determination is whether the instructions considered as a whole were sufficiently clear so as not to mislead the jury. *Nicholl*, 104 Ill. App. 3d 642, 432 N.E.2d 1267.

■ A review of the record reveals that among the instructions given to the jury were instructions concerning the issues, damages, concurrent negligence, the duty of a common carrier to its passengers and the duty of a carrier to protect passengers from other passengers. (Illinois Pattern Jury Instructions, Civil, Nos. 20.01, 30.01, 12.04, 100.01, 100.03 (2d ed. 1971).) Each of these instructions stated that the duty owed by the CTA to the plaintiff was to exercise the "highest degree of care consistent with the mode of conveyance used and the practical operation of its business as a common carrier by bus." Also, the very instruction of which the CTA complains contains the qualifying language in paragraph 1, although it is omitted from paragraph 3. In light of the fact that the jury was properly instructed as to the CTA's duty of care in six separate instructions, we do not believe that the failure to include the qualifying language in paragraph 3 of the instruction in question served to mislead the jury as to the CTA's duty of care.

The CTA next contends that the amount of damages awarded by the jury was excessive.

An award of damages will be found excessive and unfair only where the amount falls outside the necessarily flexible limits of fair and reasonable compensation or is so large as to shock the judicial conscience. (*Shaheed v. Chicago Transit Authority* (1985), 137 Ill. App. 3d 352, 359, 484 N.E.2d 542.) Damages are particularly within the province of the trier of fact, and a reviewing court will not disturb them on appeal unless the award is obviously the result of passion or prejudice. *Shaheed*, 137 Ill. App. 3d 352, 484 N.E.2d 542.

■ As summarized above, the evidence showed that the 22-year-old plaintiff was severely beaten, causing him to sustain a fractured jaw which required surgery. He remained in the hospital for nine days and incurred medical bills totaling $8,009.45 and lost wages in the amount of $408. After the fracture had healed, the plaintiff continued to experience pain and muscle spasms and was unable to open his mouth more than one-half of the normal width. He often wore a splint between his teeth to relieve the pressure between his upper and lower jaw. The plaintiff's treating physician

testified that the plaintiff suffered from a chronic temporomandibular joint problem and that it was an incurable, irreversible problem which would require treatment for an indefinite period. The doctor testified that the plaintiff would need the benefit of a splint for the rest of his life and that he would permanently suffer pain and discomfort. Given this evidence, we do not believe that the award of damages fell outside the necessarily flexible limits of fair and reasonable compensation.

■ Finally, the CTA contends that the plaintiff's lawsuit is barred by amended section 27 of the Metropolitan Transit Authority Act, which provides:

> "Neither the Authority, the members of its Board nor its officers or employees shall be held liable for failure to provide a security or police force or, if a security or police force is provided, for failure to provide adequate police protection or security, failure to prevent the commission of crimes by fellow passengers or other third persons or for the failure to apprehend criminals." Ill. Rev. Stat. 1989, ch. 111⅔, par. 327.

The record reveals that amended section 27 became effective after the date this lawsuit was filed. In *Young v. Chicago Transit Authority* (1990), 209 Ill. App. 3d 84, 568 N.E.2d 18, and *Hopkinson v. Chicago Transit Authority* (1991), 211 Ill. App. 3d 825, 570 N.E.2d 716, this court determined that amended section 27 should be applied prospectively. We agree with the reasoning expressed in *Young* and *Hopkinson* and therefore decline the CTA's invitation to reconsider the issue.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

JOHNSON and McMORROW, JJ., concur.