MARICELA SOTO, Plaintiff-Appellee, v. JUAN GAYTAN, Defendant-Appellant.

Second District   No. 2—99—0327

Opinion filed April 25, 2000.

BOWMAN, P.J., dissenting.

Robert E. Hillison and Rick Kenyon, both of Meade, Engelberg & Associates, of Chicago, for appellant.

Thomas M. Lake, of Jeep & Lake, of Waukegan, for appellee.

JUSTICE GEIGER delivered the opinion of the court:

Following a jury trial, the plaintiff, Maricela Soto, was awarded the sum of $10,008.75 for personal injuries she sustained in an automobile accident with the defendant, Juan Gaytan. On appeal, the defendant argues that the trial court erred in permitting testimony from Dr. Joseph Cicmanec, the plaintiff's treating chiropractor, concerning the permanency of her injuries because Dr. Cicmanec's last examination of the plaintiff was not sufficiently recent to the time of trial. The plaintiff responds that the defendant has waived this issue because he allegedly failed to object to the testimony during the evidence deposition of Dr. Cicmanec. The plaintiff also argues that the testimony concerning permanency was proper.

Prior to trial, the plaintiff had taken the evidence deposition of Dr. Cicmanec. Dr. Cicmanec testified that he had been a chiropractic physician for 21 years. The plaintiff presented to him on October 17, 1995, with pain and stiffness in her spine, mid-back, and low back. Following his first examination of the plaintiff, Dr. Cicmanec diagnosed her as having a "sprain/strain syndrome of the neck, cervical region and a sprain/strain syndrome of the low back or lumbar region." He then began a treatment of "physical therapy modalities," including electrical stimulation, ultrasound, trigger point therapy, and manipulation to the plaintiff's neck and back.

Dr. Cicmanec testified that he had treated the plaintiff on 13 occasions for the neck and back strains between October 26, 1995, and the last day he saw her, which was April 26, 1996. On that day, the plaintiff had low-back pain and stiffness as well as neck and shoulder pain, but "was doing somewhat better." Dr. Cicmanec testified that the plaintiff was not responding to the treatments "to the degree that I would have liked and prognosis was at best guarded."

When the plaintiff asked Dr. Cicmanec whether the plaintiff's injuries in her neck and low back were permanent, the defendant objected. Dr. Cicmanec responded that "if the [plaintiff] continues to have problems in the same areas, similar complaints after this long

period of time I think it would be reasonable to assume that it was a permanent condition."

On October 19, 1998, the defendant filed a motion *in limine* requesting that the plaintiff refrain from presenting evidence concerning her medical prognosis absent testimony from a medical practitioner about a recent examination. The trial court granted the motion *in limine*. The trial court, however, overruled the defendant's objection to testimony from Dr. Cicmanec concerning the permanency of the plaintiff's injuries.

On October 20, 1998, the jury trial began, and Dr. Cicmanec's deposition, including the testimony concerning permanency, was read to the jury. The trial court entered judgment on a jury verdict in favor of the plaintiff in the amount of $10,008.75 plus costs. The jury itemized the damages as follows:

| | |
|---|---|
| Pain and suffering from the date of the accident to present: | $5,000 |
| Future pain and suffering: | $3,200 |
| Medical care and services: | $1,568 |
| Lost wages: | $ 240. |

The defendant later filed a posttrial motion, alleging that Dr. Cicmanec's testimony concerning permanency was improper because Dr. Cicmanec's last examination of the plaintiff occurred approximately 30 months prior to trial. The trial court denied the defendant's posttrial motion, ruling that "the evidence was sufficient to submit the issue of permanency to the jury."

On appeal, the defendant argues that the trial court erred in allowing the testimony of Dr. Cicmanec concerning the permanency of the plaintiff's injuries. The plaintiff responds that, as an initial matter, the defendant has waived this argument because he failed to object to the testimony during Dr. Cicmanec's evidence deposition and at the time the deposition was read to the jury.

■■ The appellate court may only review the admissibility of testimony for error if the opposing party objected to the testimony at trial. *Miller v. Rokita*, 131 Ill. App. 3d 774, 779 (1985). From a review of the record, it is clear to us that the defendant did in fact object to the testimony concerning permanency during Dr. Cicmanec's evidence deposition. It is equally clear to us that the plaintiff has caused this court to spend unnecessary time addressing this issue on account of this misrepresentation of the facts in the plaintiff's appellate brief. Moreover, the plaintiff cites no authority that suggests that once an

objection in an evidence deposition is ruled upon by the trial court the objecting party must object again when the testimony is read to the jury in order to preserve the objection for appellate review. We are convinced that no such authority exists, as such an absurd rule would frustrate the very reason why evidence deposition objections are ruled upon by the trial court in advance of trial.

Having dispensed with the plaintiff's argument that the defendant has waived the objection to the testimony concerning permanency, we now turn to the merits of whether the testimony by Dr. Cicmanec was properly admitted. The defendant argues that the trial court abused its discretion in admitting the testimony because Dr. Cicmanec's last exam of the plaintiff was not sufficiently recent to the time of trial. The plaintiff responds that Dr. Cicmanec's testimony was properly admitted and that the recency of Dr. Cicmanec's last exam was an issue that went to the weight of the testimony.

We begin our review of the relevant case authority by noting the existence of differing approaches among the appellate court districts when analyzing whether an examination by the testifying medical treater must be recent to the time of trial in order for testimony concerning the permanency of the injury to be admissible. Several decisions have held that a recent exam is a precursor to the admissibility of the opinion. See *Knight v. Lord*, 271 Ill. App. 3d 581, 587 (1995); *Henricks v. Nyberg, Inc.*, 41 Ill. App. 3d 25, 28 (1976). Other opinions have looked to a multitude of factors, in addition to the time interval between the last exam and the time of trial, in answering this question of the admissibility of the testimony. See *Housh v. Bowers*, 271 Ill. App. 3d 1004 (1995); *Marchese v. Vincelette*, 261 Ill. App. 3d 520, 526 (1994); *Courtney v. Allied Filter Engineering, Inc.*, 181 Ill. App. 3d 222 (1989).

█ It is well settled that an opinion held by an expert at the time of trial is the only opinion evidence that may be considered by the trier of fact. *Henricks v. Nyberg*, 41 Ill. App. 3d 25, 28 (1976). In *Henricks*, the court considered whether testimony by a physician that the plaintiff's prognosis was guarded was admissible when the last time the physician had examined the plaintiff was three years before trial. The court held that, because expert opinion testimony must be founded upon facts and not conjecture, an opinion at trial based upon an examination conducted three years prior would be unreliable and therefore improper. *Henricks*, 41 Ill. App. 3d at 28. The court was persuaded that the physician's testimony concerning the prognosis he made three years prior could not represent an opinion that he held at the time of trial. *Henricks*, 41 Ill. App. 3d at 28.

In *Thurmond v. Monroe*, 235 Ill. App. 3d 281, 291 (1992), the

court considered whether a gap of "several years" between the time of the examination and the time of trial was too great to permit testimony from a treating physician concerning the permanency of the plaintiff's injuries. The court noted that no Illinois court had barred testimony concerning permanency due to the length of time from the examination. In an attempt to distinguish the holding in *Henricks*, the *Thurmond* court reasoned that, in *Henricks*, the testimony had concerned the prognosis of the plaintiff rather than the permanency of the injuries. Because the testimony in *Thurmond* concerned permanency rather than prognosis, it was irrelevant to the *Thurmond* court that there had been a gap of several years between the time of the physician's examination and the time of trial. *Thurmond*, 235 Ill. App. 3d at 291. Therefore, the *Thurmond* court permitted the testimony concerning permanency.

The distinction set forth by the *Thurmond* court between testimony concerning prognosis and testimony concerning permanency was eradicated by the court in *Marchese v. Vincelette*, 261 Ill. App. 3d 520, 526 (1994). The *Marchese* court rejected as unsound any supposed distinction between "permanency" and "prognosis," ruling that any attempted distinction was "one of semantics rather than substance." *Marchese*, 261 Ill. App. 3d at 525; see also *Knight*, 271 Ill. App. 3d at 586.

In *Marchese*, the court considered whether the trial court had abused its discretion in permitting testimony concerning the permanency of the plaintiff's injuries where there had been a 15-month gap between his last examination and the time of trial. The court noted that 15 months "can hardly be considered 'recent' " but further noted that the physician had treated the plaintiff "over a period of years." *Marchese*, 261 Ill. App. 3d at 526. Following the admission of such testimony, the *Marchese* court reasoned, any questions concerning the validity of the physician's opinion must be resolved by the trier of fact. The court pointed out that the defendant can offer evidence to counter the physician's conclusions and can argue to the jury that the opinion was unconvincing on account of the 15-month delay. *Marchese*, 261 Ill. App. 3d at 527. The court then concluded that the trial court had not abused its discretion in allowing the testimony.

Similarly, in *Courtney v. Allied Filter Engineering, Inc.*, 181 Ill. App. 3d 222 (1989), the court looked to factors other than the recency of the last examination in assessing whether testimony concerning permanency was proper. In *Courtney*, the plaintiff's orthopedic surgeon, who had last performed an examination "over four years ago," testified that an injury to the plaintiff's knee was permanent. *Courtney*, 181 Ill. App. 3d at 231. The surgeon had performed arthro-

scopic surgery on the plaintiff and later removed his kneecap. The court distinguished the facts in *Courtney* from those in *Henricks*, noting that the surgeon had treated the plaintiff for two years and had concluded, upon releasing the plaintiff after three surgeries and extensive rehabilitation, that the injury was permanent. The court also noted that the surgeon had reviewed the findings of another doctor, who had examined the plaintiff three years later, and found that the plaintiff's condition had not materially changed. *Courtney*, 181 Ill. App. 3d at 231.

Although *Courtney* stands for the proposition that an examination that is four years old may support testimony concerning permanency, *Courtney* does not stand for the proposition that the recency of the examination cannot be considered by the trial court in determining whether to permit opinion testimony on the issue of permanency. Indeed, several Illinois courts have noted that it is well settled that a physician may not testify at trial regarding his opinion concerning the permanency of a patient's injuries absent a recent examination. See *Knight*, 271 Ill. App. 3d at 585; *Ficken v. Alton & Southern Ry. Co.*, 255 Ill. App. 3d 1047, 1057 (1993); *Phelps v. Chicago Transit Authority*, 224 Ill. App. 3d 229, 232 (1991). This proposition has also been noted by the Illinois Supreme Court in *dicta*. See *Wilson v. Chicago Transit Authority*, 126 Ill. 2d 171, 176 (1988).

Moreover, the court in *Knight* squarely considered and rejected the argument that the recency of the examination goes solely to the weight of the opinion testimony and not to its admissibility. In that case, the court held that only after an examination is considered recent, and therefore admissible, does the recency of the examination go to the weight of the physician's opinion. *Knight*, 271 Ill. App. 3d at 587. The court noted that the 28-month gap at issue in *Knight* was closer to the three-year interval in *Henricks* than to the 15-month interval in *Marchese* and held that the trial court had not abused its discretion in barring the opinion testimony. *Knight*, 271 Ill. App. 3d at 587.

We also note the existence of authority that, at first blush, appears to support the plaintiff's argument that a recent examination is not required for an opinion concerning permanency to be admissible. In *Housh v. Bowers*, 271 Ill. App. 3d 1004, 1008 (1995), the reviewing court considered whether the trial court had erred in allowing evidence of the plaintiff's prior felony conviction and in failing to permit testimony from two physicians as to permanency where nearly three years had passed since the physicians' last examination of the plaintiff. The reviewing court held that the testimony concerning the felony conviction was improper and remanded the cause for a new trial. To

avoid a later appeal on the issue of the propriety of the physicians' testimony, the reviewing court undertook review of that issue as well.

The court utilized a totality of the circumstances approach in determining whether the testimony should be admitted. The court characterized the *Henricks* decision as "too narrow." *Housh*, 271 Ill. App. 3d at 1008. The court noted that the plaintiff in *Housh* had been treated by the two physicians for over a year and that, based on extensive tests, one of the physicians stated that his medical opinion was unlikely to vary if he were to reexamine the plaintiff. The court indicated in *dicta* that, on remand, the trial court should admit the testimony as to permanency. See also *Jones v. Police Board*, 297 Ill. App. 3d 922, 933 (1998) (psychologist permitted to testify that police officer was not fit to return to work despite a 14-month gap between his last exam and the time of hearing where psychologist had reviewed the reports of treaters who later examined the officer, and the court found that the psychologist's conclusions were supported by other testimony).

We note that in *Molitor v. Jaimeyfield*, 251 Ill. App. 3d 725 (1993), this court appeared to embrace the notion that the recency of an examination goes to the weight and not the admissibility of the testimony. In *Molitor*, we considered whether the trial court had erred in instructing the jury concerning damages for the plaintiff's future pain and medical expense. The defendant argued that the physician's testimony concerning the permanency of the plaintiff's injury was based upon an examination that occurred 18 months prior to trial. We noted that if the defendant believed that a lengthy time interval between the examination and the time of trial weakened the testimony concerning permanency, then the defendant should argue that point to the jury. *Molitor*, 251 Ill. App. 3d at 729. We then concluded that the time interval of 18 months was an issue of the weight of the evidence and did not render the testimony inadmissible. *Molitor*, 251 Ill. App. 3d at 729.

The key issue before us is how to reconcile the holding in *Henricks* with the holding in *Molitor*. The defendant argues that the *Henricks* rule is long-standing and is supported by several decisions, including the Illinois Supreme Court in *Wilson*. The plaintiff does not explain how we are to construe the present case in light of the rule established in *Henricks* and its progeny that a recent exam of the plaintiff is required if opinion testimony concerning permanency is to be introduced. Relying on *Courtney* and *Housh*, the plaintiff argues that the recency of the examination goes only to the weight of the physician's opinion, not the admissibility.

We reject the plaintiff's argument that *Housh* and *Courtney*

mandate that the recency of the last examination is irrelevant to admissibility. We believe that *Housh* and *Courtney* employed a totality of the circumstances approach in analyzing whether the proposed testimony was proper, and they did not preclude consideration of the recency of the last exam. Moreover, the court's comments in *Housh* concerning permanency testimony were made in *dicta*. *Housh*, 271 Ill. App. 3d at 1008.

The plaintiff also argues that the court's holding in *Thurmond* clarifies that a physician may testify as to the permanent nature of a plaintiff's injuries regardless of the recency of the examination. After carefully reviewing *Thurmond*, it is readily apparent that the holding in *Thurmond* is no longer good law in light of the holdings in *Marchese*, both cases having been decided by the Appellate Court, First District.

The *Thurmond* court permitted the testimony concerning permanency due to an erroneous distinction it made between permanency and prognosis. We agree with *Marchese* and *Knight* that there is no substantial distinction, for the purposes of assessing admissibility, between testimony concerning prognosis and concerning permanency. Accordingly, we cannot apply *Thurmond* to determine in the case at hand that the length of time between the last exam and the time of trial should not be considered.

Although the plaintiff does not argue that this court's holding in *Molitor* controls the case at hand, we must nevertheless consider whether we need to look further than the holding in *Molitor* to decide this case. We conclude that we do. *Molitor* was decided before *Knight* and *Marchese*, both of which provide additional thought and guidance on the issue of the recency of the last examination. Accordingly, we choose not to follow *Molitor* in this case, and we believe that additional inquiry into the appropriateness of the holding in *Molitor* is warranted.

Having failed to find adequate authority for the plaintiff's assertion that the recency of the last examination does not go to the admissibility of the proposed opinion testimony, we must still decide what consideration, if any, the trial court must give to the issue of recency in making the determination of admissibility. In light of the long-standing rule announced in *Henricks*, we do not believe the proposition that the recency of an examination is irrelevant in determining admissibility is legally sound. However, many of the cases that adopt the *Henricks* rule focus on the number of months between the time of the most recent exam and the time of trial. We believe that it is unhelpful to focus solely on the number of months in determining whether proposed opinion testimony is admissible, and we decline to establish a bright-line rule in this regard. In short, we do not feel that consider-

ing solely the recency of the last exam is particularly instructive in mandating how a court should determine the admissibility of testimony regarding permanency from a medical treater.

In order to fashion the appropriate test for determining whether the recency of the examination should be considered in determining the admissibility of proposed medical testimony concerning permanency, it is necessary to review the trial court's role in assessing proposed opinion testimony. In deciding whether to admit expert opinion testimony, the trial court must consider whether the testimony would aid the jury in understanding the facts. *Carlson v. City Construction Co.*, 239 Ill. App. 3d 211, 239 (1992). In general, the factors a trial court will consider include the complexity of the subject involved, the purpose for which the opinion is offered, its relation to the ultimate issue to be determined, and the danger of undue prejudice. *Wade v. City of Chicago Heights*, 295 Ill. App. 3d 873, 882 (1998). The decision to allow an expert to testify in matters of opinion lies within the discretion of the trial court. *Burns v. Michelotti*, 237 Ill. App. 3d 923, 933 (1992).

An expert's opinion is only as valid as the bases and reasons for the opinion. *Damron v. Micor Distributing, Ltd.*, 276 Ill. App. 3d 901, 907 (1995). Where there is no factual support for an expert's conclusions, his conclusions alone do not create a question of fact. *Damron*, 276 Ill. App. 3d at 907. A medical expert witness may not base his opinion on guess, conjecture, or speculation. *Scholle v. Continental National American Group*, 44 Ill. App. 3d 716, 721 (1976).

The trial court is not required to blindly accept the expert's assertion that his testimony has an adequate foundation. Rather, the trial court must look behind the expert's conclusion and analyze the adequacy of the foundation. See *Richardson v. Richardson-Merrell, Inc.*, 857 F.2d 823, 829 (D.C. Cir. 1988). See also *Simers v. Bickers*, 260 Ill. App. 3d 406, 411 (1994) (information upon which an expert bases his opinion must be reliable). Such scrutiny is required because an expert's opinion bears an aura of reliability and trustworthiness. *O'Connor v. Commonwealth Edison Co.*, 807 F. Supp. 1376, 1389 (C.D. Ill. 1992), *aff'd*, 13 F.3d 1090 (7th Cir. 1994).

The trial court has traditionally functioned in a role as the gatekeeper of proposed opinion testimony that is submitted to a jury. Support for this proposition may be seen in the fact that Illinois has adopted the *Frye* test for determining the validity of scientific testimony. See *Harris v. Cropmate Co.*, 302 Ill. App. 3d 364, 365 (1999). Pursuant to *Frye*, the trial court closely examines proposed opinion testimony from a scientific expert to determine whether it bears sufficient indicia of reliability to submit to the jury. In adopting the *Frye*

test, the Illinois courts have recognized the need to examine proposed opinion testimony to ensure that the basis for the opinion is trustworthy.

As the gatekeeper of expert opinions disseminated to the jury, the trial court plays a critical role in excluding testimony that does not bear an adequate foundation of reliability. Part of that role is to assess the basis upon which a medical treater concludes that a given injury is permanent in nature and to exclude that opinion in the absence of sufficient reliability.

The trial courts do not simply allow all testimony from a treater to go to a jury. For instance, a physician must testify either that his opinions are within a reasonable degree of medical certainty or that his opinions are based upon specialized knowledge and experience and grounded in recognized medical thought. *Plooy v. Paryani*, 275 Ill. App. 3d 1074, 1082 (1995). It is in recognizing the aura of reliability that medical opinion testimony conveys to the jury that the courts have fashioned rules to ensure that the aura of reliability is not merely an illusion but does, in fact, exist.

■ Considering together the trial court's function in acting as gatekeeper, as well as the case law concerning the recency of the last examination, we believe that the court should make an individualized determination of whether testimony from a treater concerning permanency is proper in light of many circumstances. It is clear to us that, when the admissibility of a treater's proposed opinion testimony concerning permanency is challenged, the trial court, as the gatekeeper of opinion testimony, should employ a totality of the circumstances approach.

In examining the reliability of opinion testimony concerning permanency from medical treaters, the trial court should consider the following factors: (1) the length of time since the last examination (guided by *Henricks* and *Knight*); (2) the length of time the patient was in treatment with the treater whose proposed testimony is at issue; (3) the nature of the patient's injuries or condition; (4) the type of treatment received by the patient; and (5) whether a substantial change in the patient's condition has occurred between the time of the last exam and the date of trial.

We are mindful that this is not an exhaustive list of the factors a trial court may consider in determining the reliability of the proposed opinion testimony regarding permanency. The list does not constitute a five-part test, in which the findings concerning each factor must support the admissibility of the proposed opinion testimony. While the court's consideration of the proposed testimony must be flexible, the court may not delegate its responsibility as gatekeeper to the medical community. See *Harris*, 302 Ill. App. 3d at 374-75.

The liberal approach suggested by the plaintiff is drastic, as is the exclusion of medical opinion testimony due solely to the last exam not being recent. We believe that establishing the trial court's responsibility to undertake some type of review of proposed opinion testimony concerning permanency is in line with the spirit of *Henricks*, *Marchese*, *Courtney*, *Housh*, and *Knight*. The factors outlined above should assist the trial courts in undertaking that review.

█ In this case, upon examining the above-mentioned factors, we are persuaded that the trial court abused its discretion in allowing the testimony of Dr. Cicmanec concerning permanency. The plaintiff in this case had pain symptoms of a highly subjective nature, for which she was treated by a chiropractor for less than one year. Her treatment consisted of noninvasive therapies designed primarily to loosen her muscles and alleviate pain. As noted above, Dr. Cicmanec's last examination of the plaintiff was approximately 30 months prior to trial, which was similar to the time interval at issue in *Knight*. Based upon the foregoing, we do not believe that the basis of Dr. Cicmanec's opinion contained in his deposition bears sufficient indicia of reliability for submission to the jury. Accordingly, Dr. Cicmanec's opinion concerning permanency was improperly admitted and should not have been considered by the jury in the computation of damages.

Having decided that Dr. Cicmanec's testimony concerning permanency was improper, we must determine whether reversal for a new trial is required. Relying on *Richardson v. Chapman*, 175 Ill. 2d 98 (1997), the plaintiff argues that we should reduce the judgment by way of remittitur. The defendant argues that a new trial is warranted because the improper testimony may have impermissibly influenced the jury in its award for pain and suffering experienced from the date of the accident to the time of trial.

Supreme Court Rule 366(a)(5) (155 Ill. 2d R. 366(a)(5)) provides that the reviewing court has the power to grant any relief, including entry of a remittitur. The appellate court may modify the trial court's order to reflect the proper amount of damages. *Paulson v. County of De Kalb*, 268 Ill. App. 3d 78, 83 (1994).

As the defendant notes, the jury returned an itemized verdict form, which indicated an award for future pain and suffering in the amount of $3,200 and an award for past/present pain and suffering in the amount of $5,000. It is clear that the improper testimony comprised the basis of the award for future pain and suffering of $3,200. We are unconvinced, however, that testimony concerning permanency affected the jury's award of $5,000 for past/present pain and suffering. Indeed, presenting the jury with two separate entries for pain and suffering apprises the jury that past/present pain and suffer-

ing and future pain and suffering are distinct factors. In short, we find nothing in the record or in the arguments of the parties to suggest that the jury disregarded the instructions provided by the trial court that would warrant a new trial. Accordingly, by way of remittitur, we reduce the judgment by the sum of $3,200.

For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed as modified.

Affirmed as modified.

INGLIS, J., concurs.

PRESIDING JUSTICE BOWMAN, dissenting:
I respectfully dissent.

I disagree with the majority's opinion for several reasons. Some of the factors the majority includes in its totality of the circumstances test are ill-advised because they will invite trial courts to substitute their judgment for that of the medical experts whose opinions are at issue. Additionally, even if I agreed with the majority's test, I would still disagree with the majority's conclusion that the trial court erred in admitting Dr. Cicmanec's permanency opinion. Last, I would allow the jury's award for future pain and suffering to stand.

In fashioning its totality of the circumstances test, the majority emphasizes the trial court's "gatekeeping" responsibility to insure that the expert opinions the jury hears are reliable. While I agree that trial courts must prevent unreliable expert testimony from reaching the jury, the majority goes too far and improperly inserts the trial court into the role of expert. This approach is just as inappropriate as the unquestioning acceptance of expert opinion the majority wants to guard against.

By including such factors as the nature of the patient's injuries or condition and the type of treatment the patient received, the majority requires trial judges to make medical distinctions that are properly left to medical experts. I fail to see how a trial judge is qualified to determine that an expert's opinion on permanency is unreliable because the patient received chiropractic manipulation, for example, as opposed to surgery, or because a patient sustained a sprained back as opposed to a broken back. If a party wishes to challenge an expert's opinion on such bases, the proper way to do so is through a rebuttal expert, not by asking the trial court to question an opinion a medical expert holds to a reasonable degree of medical certainty based on the expert's experience and expertise.

The majority's explanation of why it found Dr. Cicmanec's

testimony unreliable provides a good example of the problems with the majority's test. The majority reasoned, "plaintiff in this case had pain symptoms of a highly subjective nature, for which she was treated by a chiropractor for less than one year. Her treatment consisted of noninvasive therapies designed primarily to loosen her muscles and alleviate pain. *** Dr. Cicmanec's last examination of the plaintiff was approximately 30 months prior to trial ***." 313 Ill. App. 3d at 148. The majority thus concludes that given the facts of this case it was not possible for Dr. Cicmanec to form a reliable opinion on whether plaintiff's condition was permanent. However, the majority, not being a medical expert, does not know what facts are necessary in order for Dr. Cicmanec to be able to render such an opinion to a reasonable degree of chiropractic certainty and, consequently, is not qualified to make such a determination. A trial court is similarly unqualified. The majority's totality of the circumstances test, however, will inevitably result in trial courts drawing such conclusions. The majority may characterize them as legal conclusions of reliability, but they are in fact medical conclusions.

I find it significant that no other case has established such an intrusive approach. There is no support in the case law for expanding the trial court's inquiry into the basis of expert opinions to the extent the majority suggests. Further, the majority offers no explanation as to how the type of treatment a person received or the nature of a person's injuries will help trial courts determine whether an expert's opinion is reliable enough to be admitted. The majority also fails to address how trial courts, which lack the medical experience and expertise of medical experts, can make such inquiries without substituting their judgment for that of the experts. In my view the majority's totality of the circumstances test is inappropriate and unnecessary.

Unlike the majority, I do not think trial courts need to be told what factors to consider when determining whether to admit an expert opinion on permanency of injuries. I would follow this court's approach in *Molitor v. Jaimeyfield*, 251 Ill. App. 3d 725 (1993). In *Molitor*, we held that a chiropractor's trial testimony that the plaintiff would most likely continue to experience pain and to require treatment was admissible even though the chiropractor last examined the plaintiff 18 months before trial. *Molitor*, 251 Ill. App. 3d at 729. We concluded that the date of the last examination went only to the weight of the evidence, not the admissibility. *Molitor*, 251 Ill. App. 3d at 729. In my view the factors the majority sets forth in the present case, including the nature of the injury and the type of treatment received, go to the weight, not the admissibility, of the evidence. In *Molitor*, we

further noted that an expert's opinion need not be based on absolute certainty, but on a reasonable degree of medical certainty. *Molitor*, 251 Ill. App. 3d at 729. Any medical expert's opinion on permanency that is not held to a reasonable degree of medical certainty should be excluded. However, when a medical expert testifies that he holds an opinion on whether a patient's condition is permanent to a reasonable degree of medical certainty, as Dr. Cicmanec did here, the appropriate course is to admit the opinion.

Dr. Cicmanec testified to a reasonable degree of chiropractic certainty that "[i]f the [plaintiff] continues to have problems in the same areas, similar complaints after this long of a period of time I think it would be reasonable to assume that it was a permanent condition." Thus, Dr. Cicmanec's opinion was based on plaintiff's current condition, not her condition when he last saw her in 1996. Dr. Cicmanec treated plaintiff regularly for a period of several months. Plaintiff testified that there was no substantial change in her condition between the date of her last exam and the time of trial. Notwithstanding my belief that the nature of plaintiff's injuries and the type of treatment she received are inappropriate factors, I believe these factors do not affect the reliability of Dr. Cicmanec's opinion one way or the other. Consequently, applying the majority's factors, I still would affirm the trial court's decision that Dr. Cicmanec's opinion was admissible.

Last, I disagree with the majority's remittitur of the jury's award for future pain and suffering on the ground that it was based on Dr. Cicmanec's testimony regarding permanency. In my opinion the trial court properly admitted Dr. Cicmanec's opinion on permanency, and that opinion provided a basis for the jury's award for future pain and suffering. Even without Dr. Cicmanec's testimony, there was sufficient evidence of future pain and suffering to allow the jury's award to stand. Expert testimony is not a prerequisite to instructing a jury regarding future pain and suffering when future pain and suffering can be objectively determined from the nature of the injury. *Neyzelman v. Treitman*, 273 Ill. App. 3d 511, 518 (1995). The majority incorrectly states that Dr. Cicmanec's "improper" testimony "comprised the basis of the award for future pain and suffering of $3,200." 313 Ill. App. 3d at 148. The evidence in this case was that plaintiff was rear-ended by a car traveling 45 miles per hour and, as a result, suffered sprain/strain of her neck and low back. Plaintiff testified that she continued to have discomfort in her neck and lower back at the time of trial. I believe this evidence provided a sufficient and objectively reasonable basis for including a future pain and suffering component in the jury's instructions.