# Illinois Official Reports

## Appellate Court

---

### *Roach v. Union Pacific R.R.*, 2014 IL App (1st) 132015

---

| | |
|---|---|
| Appellate Court Caption | PRISCILLA ROACH, Special Administrator of the Estate of Clarence Roach, Deceased, Plaintiff-Appellee, v. UNION PACIFIC RAILROAD, Defendant-Appellant. |
| District & No. | First District, Sixth Division<br>Docket No. 1-13-2015 |
| Filed | September 5, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a survival and wrongful death action alleging that plaintiff's husband died as the result of injuries he suffered while working in a rail yard operated by defendant railroad, the trial court did not abuse its discretion in granting plaintiff's motion to exclude any reference to the fact that plaintiff and her husband had informally separated, especially when plaintiff made no claim for loss of consortium, the trial court's decision to allow decedent's family physician to offer an opinion as to the cause of decedent's death was not an abuse of discretion, despite a 17-month lapse in treatment, since that lapse only went to the weight to be given the physician's testimony, and the trial court did not err in denying defendant's request for a remittitur of a portion of the award for "lost earnings," even though the award exceeded the amount of lost earnings stipulated to by the parties, because there was no basis for defendant's claim that the jury used the wrong line on the verdict form in making the award for lost earnings. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 08-L-5401; the Hon. Irwin J. Solganick, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Taft Stettinius & Hollister (J. Timothy Eaton and Jonathan B. Amarilio, of counsel), and Union Pacific Railroad Company (Thomas Andreoli and Elizabeth A. Graham, of counsel), both of Chicago, for appellant.

Law Offices of Tracy A. Robb (Tracy A. Robb, of counsel), Curcio Law Offices (Joseph R. Curcio, of counsel), and Gorey Law Group (John R. Gorey, of counsel), all of Chicago, for appellee.

Panel

JUSTICE LAMPKIN delivered the judgment of the court, with opinion.
Justices Rochford and Reyes concurred in the judgment and opinion.

**OPINION**

¶ 1  This suit was brought by plaintiff Priscilla Roach, the wife of decedent Clarence Roach, as the special administrator of his estate, against his former employer, defendant Union Pacific Railroad. The suit alleges that Clarence's death was the result of injuries that he sustained while working at a Union Pacific rail yard, and it brings survival and wrongful death claims.

¶ 2  On February 7, 2013, a jury returned a verdict in favor of plaintiff, awarding her a total of $1,589,000 in damages. Defendant filed a posttrial motion for a new trial or, in the alternative, for an order reducing the jury's award of $180,000 for lost earnings to $63,561.67. Plaintiff also filed a posttrial motion for costs. On March 23, 2013, the trial court denied defendant's motion and granted plaintiff's motion in part, awarding her $2,906.01 in costs which defendant does not challenge on appeal.

¶ 3  On this appeal, defendant states in its brief: "The facts of the decedent's underlying injury are not at issue for purposes of this appeal. This appeal rather concerns the conduct of the trial."

¶ 4  On appeal, defendant claims: (1) that the trial court abused its discretion by barring defendant from asking plaintiff about the fact that she and her husband lived in separate residences; (2) that the trial court abused its discretion by permitting the family physician to offer an opinion about the decedent's cause of death; and (3) that the trial court erred by not remitting a portion of the jury's award for "lost earnings" because the award exceeded the amount stipulated to by the parties as the earnings that the decedent lost between his accident and his return to work.

¶ 5                                             BACKGROUND
¶ 6  The following facts are not in dispute on this appeal.
¶ 7  The decedent, Clarence Roach, was a Union Pacific carman who worked at Union Pacific's California Avenue Coach Yard, located on the west side of Chicago, Illinois, earning approximately $60,000 per year. The California Avenue Coach Yard serves as an area for

Union Pacific to inspect, repair and maintain commuter railcars. On February 1, 2008, while working at the California Avenue Coach Yard, the decedent was struck by a train performing a "shoving" movement, which involves switching rail cars onto certain commuter trains based on their maintenance schedules. As a result, the decedent sustained several injuries, including a degloving injury to his right leg. He was treated by several physicians, including Dr. John Sullivan, a trauma surgeon; Dr. Simon Lee, an orthopedic surgeon; Dr. John Polley, a plastic surgeon; and Dr. Manzoor Shah, an internist and the decedent's family physician, whose opinion was the subject of a motion *in limine* at issue on this appeal. A little over a year later, on March 9, 2009, the decedent returned to work.

¶ 8     On May 16, 2008, after the accident but before returning to work, the decedent filed a single-count complaint against Union Pacific alleging a negligence claim for damages under the Federal Employers Liability Act (45 U.S.C. § 51 *et seq.* (2006)). In March 2010, while this case was still pending, the decedent suffered a stroke and subsequently died on May 15, 2010, at the age of 57. After his death, plaintiff amended the complaint to allege that her husband's death was the result of the 2008 accident and to assert survival and wrongful death claims.

¶ 9     Prior to trial, the parties brought two motions *in limine* which are at issue on this appeal. First, plaintiff moved to bar questions concerning the fact that plaintiff and the decedent lived in separate residences. Although Union Pacific acknowledged that plaintiff and the decedent had frequent contact after the accident, it opposed the motion on the ground that this fact was relevant to the basis of plaintiff's knowledge about the decedent's pain, suffering and loss of function. The trial court granted the motion, stating in a written order that defendant was barred from making "any reference to the marital status and living arrangements of the Plaintiff and decedent." In addition, defendant moved to bar the testimony of family physician, Dr. Shah, particularly regarding the decedent's cause of death, which was denied.

¶ 10    Since neither the nature of the decedent's underlying injuries nor the amount of damages, except for the stipulation of lost earnings, is at issue on this appeal, we only summarize the evidence at trial. At trial, plaintiff testified regarding the decedent's pain and suffering and called a number of occurrence and medical witnesses, including Dr. Shah, whose evidence deposition was read into the record; Dr. Sullivan, the decedent's trauma surgeon; Dr. Simon Lee, the decedent's orthopedic surgeon; and Dr. Polley, the decedent's plastic surgeon, whose video deposition was played to the jury.

¶ 11    Defendant Union Pacific also called several witnesses, including Dr. Joseph Hartman, a board-certified internist and cardiologist who was retained as an expert witness and who opined that the decedent's workplace accident in 2008 was unrelated to his death in 2010.

¶ 12    In addition, the parties entered the following stipulation:

"STIPULATION REGARDING LOST WAGES

It is stipulated on behalf of the parties by their respective attorneys, for the purposes of the trial of this case, and for no other purpose, as follows:

1. Clarence Roach was off of work from February 2, 2008[,] through March 9, 2009,

2. Clarence Roach's net lost wages from that time period total $63,561.67.

3. The amount of $63,561.67 may be admitted into evidence as the amount of wages that Clarence Roach lost from February 2, 2008[,] through March 9, 2009."

¶ 13 On February 7, 2013, the jury returned a verdict for plaintiff and completed the following jury verdict form as follows:

> "We, the jury find for the Estate of Clarence Roach, deceased, and against the Union Pacific Railroad.
>
> We further find the following:
>
> First: We find that the total amount of damages suffered by the Estate of Clarence Roach, deceased is $ 2,270,000, itemized as follows:
>
> Loss of money, benefits, goods and services $ 50,000
>
> Disfigurement experienced by Clarence Roach $ 380,000
>
> Disability/Loss of a Normal Life experienced by Clarence Roach $ 845,000
>
> Pain and Suffering experienced by Clarence Roach $ 815,000
>
> Loss of Earnings experienced by Clarence Roach $ 180,000
>
> Second: Assuming that 100% represents the total combined negligence of all persons whose negligence proximately caused the death and injury to Clarence Roach, we find the percentage of negligence attributable to each as follows:
>
> a. Clarence Roach 30%
>
> b. Union Pacific 70%
>
> Third: After reducing the plaintiff's total damages from paragraph 'First' by the percentage of negligence if any, of Clarence Roach from line (a) in paragraph 'Second,' we award the Estate of Clarence Roach recoverable damages in the amount of $ 1,589,000."

¶ 14 As already stated, defendant's posttrial motion for a new trial and, in the alternative, for remittitur was denied, and plaintiff's posttrial motion for costs was granted in part, resulting in an award for costs of $2,906.01 which is not at issue on this appeal. After the trial court's ruling on the posttrial motions on May 23, 2013, defendant filed a notice of appeal on June 19, 2013, and this appeal followed.

¶ 15                                                        ANALYSIS

¶ 16 On appeal, defendant claims: (1) that the trial court abused its discretion by barring defendant from asking plaintiff about the fact that she and her husband lived in separate residences; (2) that the trial court abused its discretion by permitting the family physician to offer an opinion about the decedent's cause of death; and (3) that the trial court erred by not remitting a portion of the jury's award for "lost earnings" because the award exceeded the amount stipulated to by the parties as the earnings that the decedent lost between the accident and his return to work. For the reasons that follow, we affirm.

¶ 17                                                I. Separate Residences

¶ 18 Defendant claims that the trial court's order barring it from asking about plaintiff's and the decedent's separate residences "essentially" barred it from cross-examining plaintiff about her knowledge of the decedent's pain and suffering.

¶ 19 As both parties acknowledge, our standard of review on this issue is highly deferential to the trial court. Questions concerning the admission of evidence at trial are left to the sound discretion of the trial court, and we will not reverse the trial court absent an abuse of that

discretion. *Matthews v. Avalon Petroleum Co.*, 375 Ill. App. 3d 1, 9 (2007) (citing *Brax v. Kennedy*, 363 Ill. App. 3d 343, 355 (2005)). This same deferential standard also applies to a trial court's decision on a motion *in limine*. *Maggi v. RAS Development, Inc.*, 2011 IL App (1st) 091955, ¶ 61.

¶ 20    An abuse of discretion occurs only when the trial court's ruling is arbitrary, fanciful, unreasonable, or when no reasonable person would adopt the trial court's view. *People v. Cerda*, 2014 IL App (1st) 120484, ¶ 183; *Matthews*, 375 Ill. App. 3d at 9 (citing *Brax*, 363 Ill. App. 3d at 355). In determining whether there has been an abuse of discretion, the appellate court does not substitute its own judgment for that of the trial court, or even determine whether the trial court exercised its discretion wisely. *Maggi*, 2011 IL App (1st) 091955, ¶ 61.

¶ 21    Defendant concedes in its brief to this court that plaintiff had "frequent contact" with the decedent. Plaintiff testified that she and the decedent had been married for 27 years and that she saw her husband almost every day after the accident. In addition, she and the decedent went out to eat every week or weekend; she was present for most of the house calls made to the decedent by doctors and nurses; she observed the decedent's headaches during family dinners; and she would frequently act as his chauffeur. Plaintiff testified that the decedent was "traumatized" and in regular pain after the accident, that his personality changed for the worse, and that he was depressed.

¶ 22    The trial court's written order barred "any reference to the marital status and living arrangements of the Plaintiff and decedent." However, it did not bar questions about the frequency of her observations, to which plaintiff testified.

¶ 23    Courts retain broad discretion in making evidentiary rulings and may properly exclude evidence of limited probative value. *Holston v. Sisters of the Third Order of St. Francis*, 165 Ill. 2d 150, 176-77 (1995) (the trial judge did not abuse his discretion by granting plaintiffs' motion to bar any reference to the fact that the plaintiff husband and plaintiff had informally separated, although the plaintiff had a claim for loss of consortium,[1] because "[t]he trial judge was in the best position to evaluate the relevance of the evidence" and the defendant failed to persuade the judge that the separation had "any significant or lasting impact on the marriage"). We find no abuse of discretion here.

¶ 24                                    II. Family Physician's Opinion About Cause of Death

¶ 25    Defendant also claims that the trial court erred by permitting Dr. Shah, the decedent's family physician, to offer an opinion about the decedent's cause of death.

¶ 26                                    A. No Waiver

¶ 27    As a preliminary matter, plaintiff claims that this issue is waived for our review.

¶ 28    A denial of a motion *in limine* does not preserve an objection to disputed evidence later introduced at trial. *Drakeford v. University of Chicago Hospitals*, 2013 IL App (1st) 111366, ¶ 38 (citing *Brown v. Baker*, 284 Ill. App. 3d 401, 406 (1996)). When a motion *in limine* is denied, a contemporaneous objection to the evidence at the time it is offered is required to preserve the issue for review. *Drakeford*, 2013 IL App (1st) 111366, ¶ 38 (citing *Brown*, 284 Ill. App. 3d at 406). Absent the requisite objection, the right to raise the issue on appeal is

---

[1]In the case at bar, plaintiff presented no claim for loss of consortium.

waived. *Drakeford*, 2013 IL App (1st) 111366, ¶ 38 (citing *Illinois State Toll Highway Authority v. Heritage Standard Bank & Trust Co.*, 163 Ill. 2d 498, 502 (1994)).

¶ 29 In the case at bar, defendant filed two motions *in limine* seeking to bar Dr. Shah's testimony at trial, which were denied. At trial, plaintiff read into the record Dr. Shah's evidence deposition. On the morning of the day that Dr. Shah's evidence deposition was going to be read into the record, defendant's attorney renewed his objection to this testimony, stating:

> "DEFENSE COUNSEL: *** Finally, one more thing, [Y]our Honor, because I believe the evidence deposition of Dr. Shah is going to be read this morning, I just want to restate and preserve our objection to Dr. Shah's testimony in its entirety which we've discussed in the motions *in limine* and as pursuant to Rule 213.

> THE COURT: The Court's ruling stands. Your objections are made. They are in the record to preserve the issue.

> DEFENSE COUNSEL: Thank you, [Y]our Honor."

¶ 30 Dr. Shah's evidence deposition was then read into the record that afternoon, and defendant did not repeat its objection immediately prior to the reading. Plaintiff thus claims that defendant waived this issue for our review by failing to repeat in the afternoon what it had stated in the morning. Although an objection is required both contemporaneously and during trial, plaintiff fails to cite any case law to support the proposition that the same day is not sufficiently contemporaneous.

¶ 31 Faced with a similar issue, the appellate court previously observed:

> "[T]he plaintiff cites no authority that suggests that once an objection to an evidence deposition is ruled upon by the trial court the objecting party must object again when the testimony is read to the jury in order to preserve the objection for appellate review. We are convinced that no such authority exists, as such an absurd rule would frustrate the very reason why evidence deposition objections are ruled upon by the trial court in advance of trial." *Soto v. Gaytan*, 313 Ill. App. 3d 137, 140-41 (2000).

¶ 32 Therefore, we find that this issue is not waived for our review.

¶ 33                                                 B. Rule 213

¶ 34 Defendant claims that the trial court erred in allowing Dr. Shah to testify about the decedent's cause of death because plaintiff violated the disclosure requirements in Illinois Supreme Court Rule 213 (eff. Jan. 1, 2007) with respect to his testimony.

¶ 35 Illinois Supreme Court Rule 213(f) (eff. Jan. 1, 2007) provides, "[u]pon written interrogatory, a party must furnish the identities and addresses of witnesses who will testify at trial" and must provide certain information. The required information varies depending on whether a witness is: (1) a lay witness; (2) an independent expert witness; or (3) a controlled expert witness. Ill. S. Ct. R. 213(f) (eff. Jan. 1, 2007). Section (f) of Supreme Court Rule 213 has a separate subsection for each type of witness.

¶ 36 Dr. Shah was obviously not a lay witness, which the rule defines as "a person giving only fact or lay opinion testimony," and neither party argues that he was. Ill. S. Ct. R. 213(f)(1) (eff. Jan. 1, 2007). Similarly, Dr. Shah, who was the decedent's treating physician, was not a controlled expert witness, which the rule defines as "a person giving expert testimony who is the party, the party's current employee, or the party's retained expert." Ill. S. Ct. R. 213(f)(3) (eff. Jan. 1, 2007). Although defendant argues that Dr. Shah was a controlled expert witness,

defendant readily concedes that "[a] treating physician is considered a Rule 213(f)(2) independent expert witness." *Cetera v. DiFilippo*, 404 Ill. App. 3d 20, 39 (2010) (" ' "Independent expert witnesses' include persons such as *** a doctor who gives expert testimony based on the doctor's treatment of the plaintiff's injuries." ' " (quoting Ill. S. Ct. R. 213(f), Committee Comments (adopted Mar. 28, 2002))). Nonetheless, defendant argues Dr. Shah was "converted" into a controlled expert witness when plaintiff sent him articles and medical records. What defendant overlooks is that the word in the rule is "retained," and defendant does not argue that plaintiff ever retained Dr. Shah as an expert for litigation. *Cf. Wakeford v. Rodehouse Restaurants of Missouri, Inc.*, 154 Ill. 2d 543, 547 (1992) (interpreting the word "retained" in the former Illinois Supreme Court Rule 220 (eff. Oct. 1, 1984), which previously governed disclosure of expert testimony, our supreme court held that treating physicians are not "retained" and thus the rule did not apply to them). Thus, for purposes of Rule 213 and according to established case law, Dr. Shah, as plaintiff's treating physician, was an independent expert witness.

¶ 37    The rule provides that: "For each independent expert witness, the party must identify the subjects on which the witness will testify and the opinions the party expects to elicit." Ill. S. Ct. R. 213(f)(2) (eff. Jan. 1, 2007). The rule further provides, with respect to this type of witness, that: "An answer is sufficient if it gives reasonable notice of the testimony, taking into account the limitations on the party's knowledge of the facts known by and opinions held by the witness." Ill. S. Ct. R. 213(f)(2) (eff. Jan. 1, 2007).

¶ 38    Although a party has a continuing duty to supplement or amend any prior interrogatory answer when new information becomes known to that party (Ill. S. Ct. R. 213(i) (eff. Jan. 1, 2007)), "[i]nformation disclosed in a discovery deposition need not be later specifically identified in a Rule 213(f) answer" (Ill. S. Ct. R. 213(g) (eff. Jan. 1, 2007)).

¶ 39    "[U]pon objection at trial, the burden is on the proponent of the witness to prove the information was provided in a Rule 213(f) answer or in the discovery deposition." Ill. S. Ct. R. 213(g) (eff. Jan. 1, 2007).

¶ 40    Whether a party has satisfied its burden to prove that its answer or the discovery deposition provided reasonable notice is a question within the sound discretion of the trial court, and the trial court's ruling will not be disturbed absent an abuse of that discretion. *Sullivan v. Edward Hospital*, 209 Ill. 2d 100, 109 (2004); *Prairie v. Snow Valley Health Resources, Inc.*, 324 Ill. App. 3d 568, 576 (2001) (a trial court's decision about whether an expert's opinion was adequately disclosed will be reversed "only if no reasonable person would agree with the decision"). The purpose of Rule 213 is to avoid surprise. *Sullivan*, 209 Ill. 2d at 109-10.

¶ 41    The question for us is whether the trial court abused its discretion in finding that plaintiff satisfied its burden in showing that its answer or discovery deposition provided reasonable notice of Dr. Shah's testimony, "taking into account the limitations on the party's knowledge of the facts known by and opinions held by the witness." Ill. S. Ct. R. 213(f)(2) (eff. Jan. 1, 2007).

¶ 42    At his discovery deposition, Dr. Shah testified extensively. Dr. Shah treated decedent from 1999 to 2009. Prior to the incident decedent was in general excellent health but was being followed for mild hypertension. The hypertension was well managed with medication. Relevant to defendant's arguments, Dr. Shah testified decedent's blood pressure increased significantly after the train collision. He stated that both trauma and pain can intensify high blood pressure problems. Dr. Shah testified that the decedent's increased blood pressure

problems that he experienced after the train collision could be a cause of his stroke. He also testified to a reasonable degree of medical certainty that the decedent's increase in blood pressure after the train collision could have been related to multiple factors, including the "preexisting blood pressure and the trauma increasing his blood pressure and increasing his illness." Additionally, Dr. Shah testified that he had an opinion, to a reasonable degree of medical certainty, that the decedent's increased blood pressure after the train collision was a contributing factor or cause of the decedent's stroke "to some degree." Then, during cross-examination at the discovery deposition, the railroad's counsel questioned Dr. Shah as to the basis of his opinions as to the connections between the trauma and the spike in blood pressure and decedent's stroke. Defense counsel also asked Dr. Shah if the decedent's stroke could be entirely unrelated to his hypertension. Dr. Shah answered that while older people do develop strokes and strokes come on people suddenly, "looking at this [decedent] with severe hypertension, probably severe hypertension was the cause of this." Further, the railroad's counsel described Dr. Shah's opinion as "that the high blood pressure was a contributing cause to his death," and Dr. Shah agreed. We conclude that the discovery deposition gave defendant sufficient notice that Dr. Shah believed decedent's hypertension was aggravated by the trauma and led to his stroke and death.

¶ 43    Later, at Dr. Shah's evidence deposition, he testified that the decedent's injuries from the train collision "contributed to his hypertension which probably caused his stroke" and he "strongly believed" that if the decedent had not sustained the leg injury, he would still be alive.

¶ 44    We cannot find that the difference between "to some degree" and "probably" is enough to hold that the trial court abused its discretion in ruling that the former testimony provided reasonable notice of the latter testimony. *Prairie*, 324 Ill. App. 3d at 577 ("a witness is not required to use the exact words previously used in a discovery deposition"). The word "some" can mean "[b]eing a considerable number or quantity," while "probably" means "most likely." The American Heritage Dictionary of the English Language, http://ahdictionary.com/word/search/some (last visited July 16, 2014). The difference between these words is not enough to trigger an abuse of discretion. It was also not enough to trigger any surprise on the part of the railroad's counsel, who immediately described the doctor's opinion at the discovery deposition as "that the high blood pressure was a contributing cause to his death." As a result, no disclosure violation occurred.

¶ 45                                    C. Adequate Foundation

¶ 46    Defendant also claims that plaintiff failed to lay a sufficient foundation for Dr. Shah's opinion concerning the cause of the decedent's death.

¶ 47                              1. Foundation for Medical Expert

¶ 48    Our supreme court has articulated in several prior decisions " 'the requirements necessary to demonstrate an expert physician's qualifications and competency to testify.' " *Sullivan v. Edward Hospital*, 209 Ill. 2d 100, 112 (2004) (quoting *Jones v. O'Young*, 154 Ill. 2d 39, 43 (1992), citing *Purtill v. Hess*, 111 Ill. 2d 229, 242-43 (1986)). These are " 'foundational requirements and form a threshold determination.' " *McWilliams v. Dettore*, 387 Ill. App. 3d 833, 843 (2009) (quoting *Alm v. Loyola University Medical Center*, 373 Ill. App. 3d 1, 5 (2007), citing *Sullivan*, 209 Ill. 2d at 115).

¶ 49 " 'First, the physician must be a licensed member of the school of medicine about which he [or she] proposes to testify.' " *Sullivan*, 209 Ill. 2d at 112 (quoting *Jones*, 154 Ill. 2d at 43, citing *Purtill*, 111 Ill. 2d at 242-43). Second, the expert witness must show that he or she is familiar with the methods, procedures, and treatments ordinarily observed by other similarly situated physicians. *Sullivan*, 209 Ill. 2d at 112 (quoting *Jones*, 154 Ill. 2d at 43, citing *Purtill*, 111 Ill. 2d at 242-43); see also *McWilliams*, 387 Ill. App. 3d at 843 (discussing *Sullivan*).

¶ 50 With respect to the phrase "school of medicine" in the first requirement, our supreme court has stated that the "various schools of medicine" include medicine, surgery, physical therapy, nursing, pharmacy, dental surgery, podiatry and optometry. (Internal quotation marks omitted.) *Sullivan*, 209 Ill. 2d at 113. The supreme court explained that the foundational requirement of being licensed in a particular school derives from the fact that various state statutes "provide for different training" for each school. (Internal quotation marks omitted.) *Sullivan*, 209 Ill. 2d at 113. However, " '*[w]hether the expert is qualified to testify is not dependent on whether he is a member of the same specialty or subspecialty *** but, rather, whether the allegations *** concern matters within his [or her] knowledge and observation.*' " (Emphasis in original.) *Sullivan*, 209 Ill. 2d at 114 (quoting *Jones*, 154 Ill. 2d at 43).

¶ 51 Whether the two foundational requirements have been met is a legal question, which we review *de novo*. *Williams*, 387 Ill. App. 3d at 844.

¶ 52 Once the two foundational requirements are met, the trial court then has the discretion to determine whether a physician is "competent" to state his or her opinion regarding the medical issue. *Sullivan*, 209 Ill. 2d at 113.

¶ 53 Although defendant uses the term "foundation" and claims that a *de novo* standard of review applies, defendant does not appear to be challenging Dr. Shah on either of the two foundational requirements. Defendant does not claim either that Dr. Shah is not a medically licensed physician or that he is not familiar with the methods, procedures, and treatments ordinarily observed by other similarly situated physicians who treat hypertension. *Sullivan*, 209 Ill. 2d at 112. In fact, Dr. Shah has practiced medicine since 1978 and is board certified in both internal medicine and pulmonary medicine. Rather, defendant argues that Dr. Shah was not competent to state an opinion about the cause of the decedent's death because he did not treat the decedent during the approximately 17 months before the decedent's death.

¶ 54 To determine whether a medical expert is qualified to give an opinion, courts employ a "three-step analysis: the two foundational requirements of licensure and familiarity, and the discretionary requirement of competency." *Sullivan*, 209 Ill. 2d at 115; *McWilliams*, 387 Ill. App. 3d at 843. See also *Gill v. Foster*, 157 Ill. 2d 304, 317 (1993) (the trial court abused its discretion in limiting a doctor's testimony because he testified that he relied on the statements of specialists in his regular practice).

¶ 55 In this third step, in which courts act as "the gatekeeper" allowing through only reliable and relevant evidence for consideration by the jury, courts employ "a totality of the circumstances" approach. *Soto*, 313 Ill. App. 3d at 147; see also *Verbance v. Altman*, 324 Ill. App. 3d 494, 502 (2001) ("Our supreme court has expressed approval of *Soto*'s gatekeeping approach." (citing *Decker v. Libell*, 193 Ill. 2d 250, 254 (2000))). When a party challenges the reliability of a treating physician's opinion about the permanency or prognosis of a condition based on the lack of a recent examination, courts will consider a number of factors, including the length of time since the last examination, the length of time the patient was in treatment with the treating physician, and the nature of the patient's injuries or conditions. *Decker*, 193 Ill. 2d at 254

- 9 -

(discussing factors and applying an abuse-of-discretion standard);[2] *Soto*, 313 Ill. App. 3d at 147 (discussing factors), 142 ("reject[ing] as unsound any supposed distinction between 'permanency' and 'prognosis' "), 148 (applying an abuse-of-discretion standard). There is no "five-part test" regarding particular factors or "a bright-line rule" about the number of months elapsed; rather, the decision is left up to the sound discretion of the trial judge based on the totality of the circumstances. *Soto*, 313 Ill. App. 3d at 147 (this "list" of factors "does not constitute a five-part test"), 145-46 (there is no "bright-line rule" considering "solely" the number of months elapsed since "the last exam"). See also *Verbance*, 324 Ill. App. 3d at 503 ("A trial judge must have considerable leeway in deciding *** how to go about determining whether a particular [medical] expert's testimony is reliable.").

¶ 56    Thus, in the case at bar, we will review only for an abuse of discretion the trial court's ruling that the 17-month lapse did not render Dr. Shah incompetent to testify about cause of death.

¶ 57                    2. Seventeen-Month Lapse of Time

¶ 58    Defendant argues that, since Dr. Shah lacked knowledge of the decedent's condition immediately prior to the decedent's death, his opinion about the cause of death was unreliable.

¶ 59    Defendant also argues that Dr. Shah lacked "any particularized medical knowledge regarding the decedent's cause of death." However, this argument is a tautology. If one accepts Dr. Shah's testimony that the increase in severity of decedent's hypertension, or abnormally high blood pressure, after the trauma was a contributing cause to the decedent's death, then Dr. Shah did have particularized medical knowledge about this condition for which he had treated the decedent for 10 years. This argument makes sense only if one first assumes that Dr. Shah is incorrect and that the increase in decedent's hypertension was not a contributing cause. Thus, defendant's primary challenge to Dr. Shah's competency is the 17-month lapse in treatment.

¶ 60    Defendant argues that the "speculative" nature of Dr. Shah's testimony is shown by the change in his opinion. However, as we already discussed above, any change was not significant enough to affect even the disclosure requirements. At Dr. Shah's discovery deposition, he testified that he had an opinion, to a reasonable degree of medical certainty, that the decedent's increased blood pressure after the train accident was a contributing factor or cause of the decedent's stroke "to some degree." Then, during cross-examination at the discovery deposition, the railroad's counsel acknowledged that Dr. Shah's opinion was "that the high blood pressure was a contributing cause to his death." Later, at Dr. Shah's evidence deposition, he testified that the accident "contributed to his hypertension which probably caused his stroke." As we observed above, we cannot find that the trial court abused its discretion based on this difference in word choice. *Prairie*, 324 Ill. App. 3d at 577 ("a witness is not required to use the exact words previously used in a discovery deposition").

¶ 61    We turn now to defendant's primary argument regarding Dr. Shah's reliability, which is that the trial court abused its discretion in allowing him to testify despite a 17-month lapse in treatment.

---

[2]In *Decker*, our supreme court cited with approval four appellate court cases on this issue, which we discuss and apply in the section below: *Soto*, 313 Ill. App. 3d at 145-48; *Knight v. Lord*, 271 Ill. App. 3d 581, 587 (1995); *Marchese v. Vincelette*, 261 Ill. App. 3d 520, 526-27 (1994); and *Courtney v. Allied Filter Engineering, Inc.*, 181 Ill. App. 3d 222, 231 (1989).

¶ 62     In support, defendant cites *Phelps v. Chicago Transit Authority*, 224 Ill. App. 3d 229, 232 (1991), where this court held that the plaintiff did not violate the disclosure requirements of former Illinois Supreme Court Rule 220 (eff. Oct. 1, 1984) by not disclosing the fact that his treating physician examined him on the day of trial. This case has little to no bearing on the issue before us. Defendant also cites *Knight v. Lord*, 271 Ill. App. 3d 581, 621 (1995), where the appellate court held that the trial court did not abuse its discretion in barring a doctor's opinion where there was a 28-month gap. This case is readily distinguishable because, first, the gap in *Knight* was almost a year longer than in the case at bar and, second, the abuse-of-discretion standard supported barring the doctor's opinion in *Knight*, while in our case it has just the opposite effect. Thus, neither case is persuasive.

¶ 63     First, we observe that no abuse of discretion was found in cases where the gap was similar or even longer. *Decker*, 193 Ill. 2d at 255 (the trial court did not abuse its discretion in admitting a treating chiropractor's testimony where he had treated plaintiff for 4 months, and 14 months had elapsed between the last treatment and the chiropractor's evidence deposition); *Thurmond v. Monroe*, 235 Ill. App. 3d 281, 291 (1992) (a treating physician's opinion about the permanency of the plaintiff's condition was not barred despite a gap of several years between the time of the doctor's examination and the time of trial); *Courtney v. Allied Filter Engineering, Inc.*, 181 Ill. App. 3d 222, 231 (1989) (although the treating physician's "prognosis" was "formed over four years ago," his testimony was admissible where the doctor had treated plaintiff for two years and after three surgeries and extensive rehabilitation).

¶ 64     Second, in the case at bar, the 17-month gap must be balanced against the fact that Dr. Shah had treated plaintiff for 10 years. *Marchese v. Vincelette*, 261 Ill. App. 3d 520, 526 (1994) (the trial court did not abuse its discretion in allowing a treating physician's testimony about the permanency of plaintiff's condition although he had not examined her for 15 months prior to trial "because the opinion was reached after a course of treatment which extended over a period of years"); *Cf. Soto*, 313 Ill. App. 3d at 139, 148 (the trial court abused its discretion in admitting a treating chiropractor's opinion about the permanency of plaintiff's low-back pain where the chiropractor last saw her 30 months prior to trial and he had treated her for only 6 months).

¶ 65     In the case at bar, Dr. Shah was the decedent's primary physician for 10 years, treating the decedent for hypertension from 1999 to 2009, and treating him for this condition both before and after the accident, which occurred on February 1, 2008. The challenged opinion concerned this hypertension, the accident's exacerbation of it, and its probable effect. See *Verbance*, 324 Ill. App. 3d at 501, 505 (the trial court did not abuse its discretion by permitting a treating physician to discuss the proximate cause of plaintiff's condition, even though he did not treat him at the time that the condition arose). As a result of the length of Dr. Shah's treatment and the nature of his opinion, his testimony was admissible. Therefore, the gap in treatment went to the weight to be given his testimony by the jury. *Decker*, 193 Ill. 2d at 253-54.

¶ 66                                      III. Remittitur

¶ 67     Lastly, defendant argues that the trial court erred by not remitting a portion of the jury's award for "lost earnings" where the award exceeded the amount stipulated to by the parties as the earnings that the decedent lost between his accident and his return to work.

¶ 68     Remittitur has long been recognized as a part of Illinois law and application of this doctrine has been a "traditional and inherent" power of the courts that is exercised, when appropriate, to

correct excessive jury verdicts. *Lebron v. Gottlieb Memorial Hospital*, 237 Ill. 2d 217, 234 (2010) (citing *Best v. Taylor Machine Works*, 179 Ill. 2d 367, 412 (1997)). Its application presents a question of law for the court, and thus we review it *de novo*. *Lebron*, 237 Ill. 2d at 234 (citing *Best*, 179 Ill. 2d at 411-12). *De novo* consideration means that we perform the same analysis a trial judge would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011).

¶ 69    Where a jury verdict falls outside the range of fair and reasonable compensation or results from passion or prejudice, or if it is so large that it shocks the judicial conscience, then a court has a duty to correct it by ordering a remittitur of a portion of the damages, with the plaintiff's consent. *Lebron*, 237 Ill. 2d at 234; *Best*, 179 Ill. 2d at 412-13. If the plaintiff does not consent, then the court has a duty to order a new trial. *Lebron*, 237 Ill. 2d at 234; *Best*, 179 Ill. 2d at 413.

¶ 70    In addition, Illinois Supreme Court Rule 366(a)(5) (eff. Feb. 1, 1994) provides a reviewing court with the power to grant any relief, including entry of a remittitur. The appellate court may modify the trial court's order to reflect the proper amount of damages. *Soto*, 313 Ill. App. 3d at 148; *Paulson v. County of De Kalb*, 268 Ill. App. 3d 78, 83 (1994).

¶ 71    However, a damages award will not be subject to remittitur if it falls within the flexible range of conclusions which can reasonably be supported by the facts, because the assessment of damages is primarily an issue of fact for jury determination. *Best*, 179 Ill. 2d at 412; *Holston*, 165 Ill. 2d at 174-75 (our supreme court refused to reduce as excessive a $7.3 million verdict in a wrongful death and survival case where the jury's verdict "could" have been based on reasonable inferences from the evidence).

¶ 72    Refusing to disturb a $6.8 million wrongful death award, this court observed: "Reviewing courts rarely disturb jury awards. For good reason. We are in no better position to judge the appropriate amount of a verdict than are the 12 people who see and hear the arguments and the evidence." *Barry v. Owens-Corning Fiberglas Corp.*, 282 Ill. App. 3d 199, 207 (1996) (cited with approval by our supreme court in *Best*, 179 Ill. 2d at 412).

¶ 73    In the case at bar, defendant forthrightly admits that "the award may be the result of confusion because there was some testimony from plaintiff that if the decedent had not died after his return to work, he would have worked several more years until his retirement at age 60." The decedent died at age 57, which meant that, if he had not died, he would have had 3 more years until retirement, and he earned approximately $60,000 per year. Three times $60,000 is $180,000, which is exactly what the jury awarded.

¶ 74    However, defendant argues that "[i]f the jury meant to award plaintiff for the amount of wages the decedent would have earned had he lived, it should have done so on the verdict form line relating to plaintiff's wrongful death claim, not the line addressing the survival claim."

¶ 75    In other words, defendant argues that the jury should have put this award on the line entitled "[l]oss of money, benefits and goods and services," rather than on the line entitled "[l]oss of earnings experienced by Clarence Roach."

¶ 76    In *Barry*, we addressed a claim that the jury was given an inaccurate verdict form allowing it to provide individual awards to each survivor in a wrongful death action, and that remittitur was required as a result; and we rejected it. *Barry*, 282 Ill. App. 3d at 205. In *Barry*, we concluded that the jury should not have received a verdict form with separate award lines for each survivor; nonetheless, we declined to reduce the award, stating: "We do not, of course, know how the jury determined the amounts it placed on the separate lines. We have no reason

- 12 -

to conclude that the use of separate lines somehow inflated the total wrongful death award." *Barry*, 282 Ill. App. 3d at 205. Similarly, in the case at bar, we have no reason to conclude that the jury's allegedly mistaken use of one line as opposed to another line thereby inflated the total award, and thus we decline to reduce the overall award.

¶ 77                                                         CONCLUSION

¶ 78        For the foregoing reasons, we conclude: (1) that the trial court did not abuse its discretion by barring defendant from asking plaintiff about the fact that she and her husband lived in separate residences; (2) that the trial court did not abuse its discretion by permitting the family physician to offer an opinion about the decedent's cause of death; and (3) that the trial court did not err by not remitting a portion of the jury's award for "lost earnings" where the award exceeded the amount stipulated to by the parties as the earnings that the decedent lost between his accident and his return to work.

¶ 79        Affirmed.