# Illinois Official Reports

## Appellate Court

---

### *Logan v. U.S. Bank*, 2016 IL App (1st) 152549

---

| | |
|---|---|
| Appellate Court Caption | KIA RASHIKI LOGAN, CARRIE CHANELLE TAYLOR, SEAN DEANGELO LOGAN, DUANE WILLIE TAYLOR, WILLIAM LEON TAYLOR, ANGEL LOGAN, JORDAN LENON TAYLOR, and DOMINIQUE SONYA LOGAN, All Individually; and SANDRA LOGAN, as Mother and Next Friend and Guardian of Essence Destiny Taylor, Antwon Assante Taylor, Martrell Francisco Taylor, and Jurea Saquill Taylor, Plaintiffs-Appellants, v. U.S. BANK, a National Association, F. JOHN CUSHING III, MICHAEL J. KRALOVEC, DANIEL C. MEENAN, JR., and KRALOVEC MEENAN, P.C., Defendants (F. John Cushing III, Michael J. Kralovec, Daniel C. Meenan, Jr., and Kralovec Meenan, P.C., Defendants-Appellees). |
| District & No. | First District, Sixth Division<br>Docket No. 1-15-2549 |
| Filed | November 4, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 2010-L-12471; the Hon. Brigid Mary McGrath, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Philip J. Schmidt, of Chicago, for appellants.<br><br>Michael Resis and Ellen L. Green, of SmithAmundsen LLC, of Chicago, for appellees. |

PRESIDING JUSTICE HOFFMAN delivered the judgment of the court, with opinion.
Justices Cunningham and Rochford concurred in the judgment and opinion.

**OPINION**

¶ 1   The plaintiffs, Kia Rashiki Logan, Carrie Chanelle Taylor, Sean Deangelo Logan, Duane Willie Taylor, William Leon Taylor, Angel Logan, Jordan Lenon Taylor, and Dominique Sonya Logan, all individually (collectively referred to as the adult plaintiffs); and Sandra Logan, as mother, next friend, and guardian of Essence Destiny Taylor, Antwon Assante Taylor, Martrell Francisco Taylor, and Jurea Saquill Taylor (collectively referred to as the minors), appeal from an order of the circuit court which granted summary judgment in favor of the defendants, F. John Cushing III, Michael J. Kralovec, Daniel C. Meenan, Jr., and Kralovec Meenan, P.C. (collectively referred to as the attorney defendants) and denied the plaintiffs' motion for partial summary judgment on their third amended complaint for professional malpractice and breach of fiduciary duty. For the reasons that follow, we affirm the judgment of the circuit court.

¶ 2   The adult plaintiffs and the minors are the next of kin of Willie Taylor (decedent) who died as the result of being crushed by a motor vehicle as he was unloading a truck on July 28, 2003. U.S. Bank, as the independent administrator of the estate of Willie Taylor (Estate), maintained a wrongful death action against Harold Lindsey, the driver of the truck that crushed the decedent, and Carmichael Leasing Company, Inc. (Carmichael), the lessor of the truck which Lindsey was driving (hereinafter referred to as the underlying action). Cushing prosecuted that action for the Estate. Following trial, the jury returned a $3 million verdict in favor of the Estate reduced by 50% for the decedent's contributory negligence, resulting in a net verdict of $1.5 million, and judgment was entered on the verdict. Following the denial of the posttrial motions, Lindsey and Carmichael filed an appeal from the $1.5 million judgment entered against them. The Estate, represented by Cushing, appealed from the $1.5 million contributory negligence reduction in the verdict. The Estate's appeal was docketed in this court as No. 1-07-2353. While the appeals were pending and with the approval of the bank, Cushing retained Kralovec, Meenan, and Kralovec Meenan, P.C. (collectively referred to as the Kralovec defendants) to assist in the appellate proceedings. The attorney defendants filed a motion to voluntarily dismiss the Estate's appeal, which this court granted. Subsequently, the $1.5 million judgment in favor of the Estate was affirmed. *U.S. Bank v. Lindsey*, 397 Ill. App. 3d 437 (2009).

¶ 3   The plaintiffs filed the instant action against the defendants asserting claims of professional malpractice and breach of fiduciary duties by reason of the voluntary dismissal of the Estate's appeal without their consent. In the latest iteration, their third amended complaint, the plaintiffs asserted claims of professional malpractice and breach of fiduciary duties against Cushing in counts I and III, respectively. In count I, the professional malpractice claim, the plaintiffs alleged that Cushing breached the duties owed to them by voluntarily dismissing the Estate's appeal without their consent and without first attempting to obtain consideration for the dismissal. In count III, the plaintiffs claimed that Cushing

breached his fiduciary duties by failing to inform them that he delegated the responsibility of representing the Estate on appeal to the Kralovec defendants and by voluntarily dismissing the Estate's appeal without their consent and without attempting to obtain consideration for the dismissal. In counts II and IV, the plaintiffs asserted essentially the same claims against the Kralovec defendants as had been pled against Cushing. In count V, the plaintiffs asserted a claim of breach of fiduciary duty against U.S. Bank, alleging that it breached its duties by failing to inform them that Cushing had delegated the responsibility of handling the Estate's appeal to the Kralovec defendants, failing to properly monitor the progress and status of the Estate's appeal, failing to obtain their authorization before dismissing the Estate's appeal, and by dismissing the Estate's appeal without first attempting to obtain consideration for the dismissal. The five counts contain other allegations against the defendants that are essentially restatements of the allegations already noted or merely conclusions unsupported by factual allegations upon which the conclusions rest.

¶ 4        On July 30, 2014, the circuit court entered an agreed order dismissing all claims against U.S. Bank, and consequently, U.S. Bank is not a party to this appeal. The Kralovec defendants filed a motion for summary judgment directed against the plaintiffs' third amended complaint, arguing both that the plaintiffs are unable to prove that any action on their part was a proximate cause of the plaintiffs' claimed damages and that they did not breach their duty by dismissing the Estate's appeal because their decision to do so was made in good faith and well reasoned. Cushing joined in the motion filed by the Kralovec defendants. Subsequently, the plaintiffs filed what they styled as motions for partial summary judgment on the issues of duty and proximate cause. Following the filing of briefs by all remaining parties and having entertained argument, the circuit court granted summary judgment in favor of the attorney defendants and denied the plaintiffs' motion for partial summary judgment. This appeal followed.

¶ 5        In urging reversal of the summary judgment entered in favor of the attorney defendants, the plaintiffs argue that the evidentiary material on file established that the attorney defendants owed them, as the decedent's next of kin, a duty of care in the prosecution and handling of the Estate's appeal; that they breached that duty by dismissing the Estate's appeal without their consent; and that, as a proximate result, they have been damaged to the extent of $1.5 million. The plaintiffs' argument as to proximate cause is based upon the assertion that, had the Estate's appeal not been dismissed, the appellate court would have reinstated the jury's gross verdict of $3 million. In this regard, the claimant contends that the trial court in the underlying action erred in admitting the testimony of Dr. O'Donnell, who opined that the decedent was impaired at the time of the accident leading to his death as a result of morphine in his blood. They also assert that there is "not a scintilla of evidence" in the record from the trial of the underlying action that the conduct of the decedent contributed to the accident or his resulting death.

¶ 6        As this case comes to us on appeal from a summary judgment entered in favor of the attorney defendants, our review is *de novo*. *In re Estate of Hoover*, 155 Ill. 2d 402, 411 (1993). As such, we must independently examine the evidentiary material submitted in support of and in opposition to the motion for summary judgment. *Arra v. First State Bank & Trust Co. of Franklin Park*, 250 Ill. App. 3d 403, 406 (1993). We strictly construe all of the evidentiary material submitted in support of the motion and liberally construe all evidentiary material submitted in opposition. *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008).

¶ 7        The purpose of a motion for summary judgment is to determine the existence or absence of a genuine issue as to any material fact. *Illinois State Bar Ass'n Mutual Insurance Co. v. Law Office of Tuzzolino & Terpinas*, 2015 IL 117096, ¶ 14. Summary judgment is a drastic method of disposing of litigation, and it should not be employed unless the pleadings, depositions, affidavits, and admissions on file, if any, show that there is no genuine issue as to any material fact and the movant's right to judgment as a matter of law is free from doubt. 735 ILCS 5/2-1005(c) (West 2014); *Bruns v. City of Centralia*, 2014 IL 116998, ¶ 12. However, when the movant's right to judgment as a matter of law is free from doubt, summary judgment should be encouraged as it aids in the expeditious disposition of the litigation. *Purtill v. Hess*, 111 Ill. 2d 229, 240 (1986).

¶ 8        Whether labeled professional malpractice or breach of fiduciary duty, the plaintiffs' claims against the attorney defendants are based upon their having voluntarily dismissed the Estate's appeal from the jury's finding of contributory negligence on the part of the decedent and the resulting $1.5 million reduction in recoverable damages. This is a case of appellate legal malpractice. As in any legal malpractice claim, it was the plaintiffs' burden to plead and prove that the attorney defendants owed them a duty of care, that the attorney defendants breached that duty, and that they suffered damages as a proximate result of the breach. *Fox v. Seiden*, 382 Ill. App. 3d 288, 294 (2008). However, assuming *arguendo* that the attorney defendants owed a duty to the plaintiffs, which they deny, and further assuming that the attorney defendants breached that duty by voluntarily dismissing the Estate's appeal, which the attorney defendants also deny, we may still directly address the issue of proximate cause to determine whether the attorney defendants were entitled to judgment as a matter of law. *Abrams v. City of Chicago*, 211 Ill. 2d 251, 257 (2004).

¶ 9        To prevail in this case, the plaintiffs were required to prove that, but for the attorney defendants having voluntarily dismissed the Estate's appeal, the appellate court would have reversed that portion of the jury's verdict, which fixed the decedent's contributory negligence at 50%, and reinstated the jury's gross verdict of $3 million. Whether the plaintiffs could recover in the instant action rests upon how the appellate court would have ruled on the Estate's appeal had it not been dismissed. The issue of proximate cause in an appellate legal malpractice action is a question of law for the court, not a question of fact. See *Governmental Interinsurance Exchange v. Judge*, 221 Ill. 2d 195, 212-14 (2006).

¶ 10        We first address the plaintiffs' argument that, in the trial of the underlying action, the trial court erred in admitting the testimony of Dr. O'Donnell, the pharmacologist, who testified that, at the time of the accident leading to his death, the decedent had morphine in his blood and as a result was impaired. The plaintiffs contend that the admission of Dr. O'Donnell's testimony was prejudicial and that, had the Estate's appeal not been dismissed, the appellate court would have found error in its admission. We disagree.

¶ 11        The admission of evidence at trial is a matter left to the sound discretion of the trial court, and its resolution of such issues will not be disturbed on review absent an abuse of that discretion. *Roach v. Union Pacific R.R.*, 2014 IL App (1st) 132015, ¶ 19; *Matthews v. Avalon Petroleum Co.*, 375 Ill. App. 3d 1, 9 (2007). An abuse of discretion occurs only when the trial court's ruling is arbitrary, fanciful, unreasonable, or when no reasonable person would adopt the trial court's view. *Roach*, 2014 IL App (1st) 132015, ¶ 20; *Matthews*, 375 Ill. App. 3d at 9. We find no abuse of discretion in the admission of Dr. O'Donnell's testimony.

¶ 12    Prior to the trial of the underlying action, the Estate filed two motions addressed to the testimony of Dr. O'Donnell. In its first motion, the Estate sought to bar him from testifying to his opinion that the morphine in the decedent's blood at the time of his death resulted from the metabolization of heroin that he had taken that day and that the high amount of morphine in the decedent's blood indicated that he was a heroin abuser. In response to the motion, the trial court barred Dr. O'Donnell from testifying that the levels of morphine in the decedent's blood at the time of his death was proof that he was a chronic heroin abuser. In its second pretrial motion, the Estate again sought to bar Dr. O'Donnell from testifying that the decedent had morphine in his blood at the time of his death. On that motion, the trial judge ruled that Dr. O'Donnell would be permitted to testify that there was morphine in the decedent's blood, the amount of morphine that was in his blood, that the amount of morphine in the decedent's blood was enough to cause impairment, and that, in his opinion, the decedent was impaired. At trial, and over the objection of the Estate, Dr. O'Donnell testified that, at the time of the accident leading to his death, the decedent had morphine in his blood in a quantity 10 to 20 times the amount that would customarily be administered to a patient in moderate pain, the effect of which would cause disorientation and impaired cognitive and motor ability.

¶ 13    Relying upon this court's decision in *Petraski v. Thedos*, 2011 IL App (1st) 103218 (*Petraski II*), the plaintiffs argue that, had the Estate's appeal not been dismissed, the appellate court would have determined that the trial court erred in admitting Dr. O'Donnell's testimony, and in the absence of any other evidence that the decedent was impaired or otherwise negligent, would have reversed the jury's contributory negligence finding and reinstated its gross verdict of $3 million. We find, however, that the plaintiffs' reliance upon *Petraski II* is misplaced.

¶ 14    *Petraski II* is a case in which this court held that the trial court's order granting a new trial was not an abuse of discretion based upon its finding that expert testimony of intoxication and impairment introduced by the defense at trial was unreliable and prejudicial and, as a consequence, should not have been admitted. *Id.* ¶ 125. The trial court in that case found that, given the level of alcohol in the injured party's blood, it was speculative for the defense expert to testify to the possible effects of her alcohol consumption on her actual conduct. *Id.* ¶ 124. However, we did not announce any bright-line test, nor did we conclude that admission of an expert's opinion of impairment would be an abuse of discretion based upon an unusually high level of blood-alcohol content. In *Petraski v. Thedos*, 382 Ill. App. 3d 22, 27-28 (2008) (*Petraski I*), this court held that evidence of intoxication is relevant to the issue of contributory negligence (see also *Marshall v. Osborn*, 213 Ill. App. 3d 134, 140 (1991)), and we never retreated from that proposition in *Petraski II*. What we said in *Petraski II* was that we found no authority for the proposition that an expert may testify to an individual's impairment based solely upon the fact that her blood-alcohol content was above the statutory level at which a person is presumed to be under the influence of alcohol. *Petraski II*, 2011 IL App (1st) 103218, ¶ 115. We noted that one may be under the influence of alcohol in varying degrees without necessarily being intoxicated or impaired. *Id.* We believe that the admission of an expert witness's opinion that an individual was intoxicated or impaired based upon blood-alcohol content depends upon the level of alcohol in the individual's blood. When, as in *Petraski II*, the alcohol level in an individual's blood, although above the statutory level at which an individual is presumed to be under the

influence of alcohol, is relatively low, a trial court does not abuse discretion in barring an expert's opinion that the individual was intoxicated or impaired based solely upon blood-alcohol content. However, when the level of alcohol in an individual's blood is unusually high, such as four times the legal limit, a trial court does not abuse its discretion in permitting an expert to testify to his or her opinion that the alcohol level in the individual's blood would have had a profound effect upon the individual's perception, judgment, and physical abilities. *Marshall*, 213 Ill. App. 3d at 140-41.

¶ 15     In this case, we are not dealing with testimony of impairment due to blood-alcohol content; rather, this case involved testimony of impairment based upon morphine in the decedent's blood at the time of his death. We believe, however, that the analysis is the same. A trial court's decision to admit or not to admit expert testimony of impairment based solely upon the presence of narcotics in an individual's blood should be informed by the level of narcotics in his blood.

¶ 16     Evidence of narcotics in a person's blood is relevant to the extent that it affects the care which the person might take for his own safety. See *id.* at 140 ("Evidence of a plaintiff's intoxication is relevant to the extent that it affects the care that he takes for his own safety ***."). Dr. O'Donnell testified that, at the time of his death, the decedent had 10 to 20 times the level of morphine in his blood that would be customarily administered to a patient in pain. He described the effect of such an amount of morphine as "molasses on your brain." According to Dr. O'Donnell, the level of morphine in the decedent's blood would cause confusion, and generally impair cognitive and motor ability. Based upon the level of morphine in the decedent's blood at the time of his death, we cannot say that the trial court abused its discretion in admitting Dr. O'Donnell's opinion testimony. We conclude, therefore, that, had the Estate's appeal not been dismissed, the appellate court would have found no error in the trial court's admission of Dr. O'Donnell's testimony.

¶ 17     We believe that evidence of a high level of narcotics in a person's blood is admissible as a circumstance to be weighed by the jury in determining whether the person was acting with due care for his own safety. As this court held in its decision in Carmichael's appeal from the judgment entered against it in the underlying action: "The jury was free to draw any and all reasonable inferences from Dr. O'Donnell's testimony regarding impairment due to the presence of morphine in decedent's blood, including inferences that decedent was contributorily negligent ***." *U.S. Bank*, 397 Ill. App. 3d at 458.

¶ 18     In order to establish a proximate causal relationship between the alleged breach of duty on the part of the attorney defendants and the damages which the plaintiffs claimed, the plaintiffs were required to prove that "but for" the dismissal of the Estate's appeal, the appellate court would have vacated the jury's contributory negligence finding and reinstated the $3 million verdict. In their brief before this court, the plaintiffs have devoted half of the argument section to the assertion that: "The Appellate Court would have reinstated the $3,000,000.00 verdict." However, having rejected the argument that, had the Estate's appeal not been dismissed, the appellate court would have found error in the trial court's admission of Dr. O'Donnell's testimony, we turn to the remainder of the plaintiffs' argument in support of this assertion. The plaintiffs appear to be arguing that, had the Estate's appeal gone forward, the appellate court would have found that the jury's finding of contributory negligence was against the manifest weight of the evidence. To the extent that one might

interpret the plaintiffs' argument to be one of manifest weight, which the attorney defendants have assumed in their response brief, we reject the argument.

¶ 19 Jury verdicts may be set aside when they are against the manifest weight of the evidence. *Mizowek v. DeFranco*, 64 Ill. 2d 303, 310 (1976). " '[A] verdict is against the manifest weight of the evidence where the opposite conclusion is clearly evident or where the findings of the jury are unreasonable, arbitrary and not based upon any evidence.' " (Internal quotation marks omitted.) *Stift v. Lizzardo*, 362 Ill. App. 3d 1019, 1028 (2005) (quoting *Maple v. Gustafson*, 151 Ill. 2d 445, 454 (1992)). However, a reviewing court is not at liberty to substitute its judgment for that of the trier of fact merely because different conclusions might be drawn from the evidence presented at trial or because the reviewing court might believe that some other result might be more reasonable. *Finley v. New York Central R.R. Co.*, 19 Ill. 2d 428, 436 (1960).

¶ 20 A person is contributorily negligent when he acts without that degree of care which a reasonably prudent person would have used for his own safety under like circumstances and that action is a proximate cause of his injury. *Bizarro v. Ziegler*, 254 Ill. App. 3d 626, 630 (1993). Whether a person has acted with due care is a question for a jury to determine based upon the facts of a particular case. *Id.*

¶ 21 In the underlying action, the defendants charged that the decedent was contributorily negligent for, *inter alia*, failing to maintain a proper lookout and failing to heed the warning sounds from the truck which struck him. Harold Lindsey, the driver of the truck which struck the decedent, testified that when he shifted the vehicle into reverse a "real loud" beep went off in the back of the truck. Melvin Payton, one of the decedent's coworkers who was present when the decedent was struck and saw the truck back into the decedent, testified that he heard a "buzzer" from the truck as it was backing up. Arthur Adkins, the Estate's motor-fleet-safety expert, testified that the truck's alarm was sounding from the time that Lindsey began backing up until the truck made contact with the decedent and that the decedent would have been able to hear the alarm. And as noted earlier, the jury heard the testimony of Dr. O'Donnell that the amount of morphine in the decedent's blood would cause confusion, disorientation, and impaired cognitive and motor ability.

¶ 22 The jury in the underlying action was instructed that whether a person was impaired could be considered with other facts and circumstances in evidence in determining whether that person was contributorily negligent. We believe that the instruction is a correct statement of the law. See *Basham v. Hunt*, 332 Ill. App. 3d 980, 995 (2002) (intoxication is a circumstance to be weighed by the jury in its determination of the issue of due care). And based upon the evidence in the record of the underlying action, especially the opinions of Dr. O'Donnell, we are unable to find that the jury's determination that the decedent was contributorily negligent, is against the manifest weight of the evidence. We conclude, therefore, that, had the Estate's appeal not been dismissed, the jury's finding of contributory negligence would not have been overturned. Further, we do not believe that the jury's finding that the decedent was 50% contributorily negligent would have been disturbed on appeal, as the determination of the percentage of contributory negligence was a matter for the jury to decide. *Johnson v. Colley*, 111 Ill. 2d 468, 475 (1986).

¶ 23 In summary, we find that, had the Estate's appeal not been dismissed, the jury's determination that the decedent was 50% contributorily negligent would not have been reversed, and, therefore, the attorney defendants' alleged breach of duty in dismissing that

appeal was not the proximate cause of the plaintiffs' alleged damages. Consequently, as the element of proximate cause is absent, we affirm the order of the circuit court granting summary judgment in favor of the attorney defendants and denying the plaintiffs' motion for partial summary judgment.

¶ 24        Affirmed.